**Francis A. McCLELLAND, Plaintiff,**

v.

**Jennifer Lynn RIFFLE, Defendant.**

**Civil Action No. CV296–206.**

United States District Court,
S.D. Georgia,
Brunswick Division.

May 28, 1997.

James B. Matthews, III, H. Craig Stafford, Blackwood, Matthews & Steel, Atlanta, GA, for Francis A. McClelland.

John Eric Bumgartner, Whelchel, Brown, Reddick & Bumgartner, Brunswick, GA, Thomas Lamar Swift, Brunswick, GA, for Jennifer Lynn Riffle.

Richard A. Rominger, Thomas Langston Bass, Jr., Brennan, Harris & Rominger, Savannah, GA, for American Southern Insurance Company.

### ORDER

ALAIMO, District Judge.

Plaintiff, Francis A. McClelland ("McClelland"), brings this diversity of citizenship action pursuant to the tort laws of Georgia against Defendant, Jennifer Lynn Riffle ("Riffle"). Currently before the Court is Riffle's Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, Riffle's motion will be **DENIED.**

### FACTS

The basic facts involved in this case are not in dispute. A high speed car chase ensued after McClelland, a highway patrolman, attempted to stop the vehicle operated by Riffle. As a result of that high speed chase, Riffle's vehicle struck McClelland's patrol car, causing the patrol car to flip over, thus

ejecting McClelland and causing him severe injuries.

On April 2, 1996, McClelland was on duty as a patrol officer for the Liberty County Sheriff's Department. Riding with McClelland was Deputy Sheriff Shawn Fields ("Fields"). During their patrol, McClelland noticed Riffles' vehicle swerving erratically, as if it was operated by an individual under the influence of intoxicants, and attempted to stop her vehicle.

When McClelland attempted to stop Riffle's vehicle, Riffle accelerated, sped away from McClelland's patrol car and led McClelland and Fields on a lengthy, high speed pursuit. McClelland testified that Riffle sped through several intersections, at least one red light, and through two road blocks. During the chase, Riffle traveled in excess of one hundred miles per hour. When McClelland attempted to pass Riffle, her vehicle struck the patrol car, forcing McClelland to back away. After entering Wayne County, Georgia, McClelland attempted to perform a "rolling road block," thereby forcing Riffle to stop. When McClelland once again attempted to pass Riffle's vehicle, her car veered off the road, and then shot back onto the roadway and into the patrol car. When the vehicles collided for the second time, the patrol car spun out of control and flipped over several times. McClelland was ejected from the patrol car and severely injured.

Deputy Fields testified that, prior to the second collision, Riffle lost control of her vehicle and it appeared to him that she did not intentionally strike the patrol car. Riffle pled guilty to several traffic offenses, including fleeing to elude a police officer and driving while unlicensed.

## DISCUSSION

### I. Summary Judgment

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994), *cert. denied,* — U.S. ——, 116 S.Ct. 335, 133 L.Ed.2d 234 (1995). After the movant meets this burden, "the non–moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.,* 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non–moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non–movant. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir.1992). Additionally, a "court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non–movant relies, are 'implausible'." *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir.1996). Furthermore, when the evidence is only circumstantial, summary judgment may be granted when a court "concludes that no reasonable jury may infer from the assumed facts the conclusions upon which the non–movant's claim rests." *Id*

### II. The Fireman's Rule

As stated, the parties' positions with respect to the facts do not differ. The parties agree that Riffle eluded a police officer, caused a high speed chase, and created a situation in which a police officer eventually was injured. The parties even agree on the specific legal theory that controls the outcome of this case. (Def.'s Mot. for Summ. J. at 4; Pl.'s Resp. to Def.'s Mot. for Summ. J. at 6.)

■ That legal theory is entitled the "Fireman's Rule" and provides that while a fireman may recover for negligence independent of the fire, a landowner generally is not liable in tort to a fireman for negligence in causing the fire. *Ingram v. Peachtree South, Ltd.,* 182 Ga.App. 367, 355 S.E.2d 717 (1987). The parties agree that this legal principle was extended by the Georgia courts to cover police officers by *Martin v. Gaither,* 219 Ga.App. 646, 466 S.E.2d 621 (1995). The

fundamental dispute at this stage, however, is whether the Fireman's Rule completely bars McClelland from asserting a claim against Riffle.

McClelland contends that because the Fireman's Rule only bars recovery for acts of simple negligence, he may recover from Riffle because her conduct constituted wilful and wanton misconduct. Riffle contends that the Fireman's Rule bars *all* recovery by a police officer for injuries caused in the pursuit of his or her official duties.

Although both parties in the case at bar cite to various judicial opinions issued by courts located outside of Georgia to support their respective arguments, the Court finds that focusing on the cited "persuasive" authority is entirely unnecessary. The *Gaither* and *Ingram* opinions afford the Court the analysis and direction necessary to adjudicate fully Riffle's motion.

At first reading, *Gaither* appears to bar nearly all claims made by police officers against the wrongdoers who caused their injuries. The Georgia Court of Appeals in *Gaither* states that "[a] public safety officer ... cannot base a tort claim upon damage caused by the very risk that he is paid to encounter and with which he is trained to cope." *Id.* 466 S.E.2d at 625 (internal quotations omitted). The court continued by stating that it is "society's responsibility to compensate public safety employees for the risk-taking which their respective professions intrinsically require and for the consequences of that risk taking." *Id.* However, The above quoted language was based on the premise that the original wrongdoer engaged only in negligent, as opposed to wilful and wanton, conduct. The issue of whether the Fireman's Rule applies to wilful and wanton misconduct never has been litigated in Georgia.

In both *Gaither* and *Ingram*, the defendants were found to have acted negligently. However, *Gaither* also clearly suggests that a different rule applies when a defendant goes beyond simple negligent conduct and, instead, engages in wilful and wanton misconduct, thereby causing severe injuries to a public safety officer. *See id*, The Court in *Gaither* states that police officers, like firemen, "are not precluded from recovery for injury from pitfalls, mantraps and things of that kind *or wanton and wilful conduct,"* *Id.* (emphasis added).

While *Ingram* predates *Gaither* and establishes the "general rule" implicated in the case at bar, *Ingram* clearly left open the possibility that a public safety officer may be able to recover for injuries resulting from a wrongdoer's wilful and wanton misconduct. The *Ingram* court states that, apart from causing the fire, there was nothing "to constitute wilful and wanton misconduct ..." by the defendants, thereby leaving open the inference that a different rule applies when defendants engage in wilful and wanton misconduct. *Ingram*, 355 S.E.2d at 719. That opening apparently was seized upon by the court in *Gaither*, as indicated above. *See also White v. Edmond*, 971 F.2d 681, 685 (11th Cir.1992) (recognizing that the Fireman's Rule does not bar public safety officials from recovery in all cases and noting that a court must focus both on the initial negligence requiring the public safety officer's presence, and on subsequent misconduct by the defendant).

The *Gaither* court went beyond *Ingram* by expressly defining wilful and wanton misconduct, stating that it is conduct "such as to evidence a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences ... as to justify the jury in finding a wantonness equivalent in spirit to actual intent." *Gaith-er*, 466 S.E.2d at 625 (internal quotations omitted). "There is an element of intent, actual or imputed, in 'wilful and wanton conduct' which removes such conduct from the range of conduct which may be termed negligent." *Id.* If the Georgia courts intended the Fireman's Rule to apply to situations in which a public safety employee is injured by the wilful and wanton misconduct of a tortfeasor, there would have been no need to include such a definition in *Gaither*.

 Although McClelland is paid to assume certain risks inherent in his chosen profession, the Court has no difficulty in determining that Riffle's behavior on April 2, 1996, amounted to wilful and wanton misconduct. The high speed chase that Riffle

**1056**

caused created a substantial risk of danger or even death to herself, McClelland, Fields, and any number of unknown third parties. Riffle sped through two road blocks specifically designed to stop her, traveled at speeds of over one hundred miles per hour, struck McClelland's vehicle at least twice, and sped through intersections and red lights. Moreover, Riffle engaged in such conduct with full knowledge that a public safety officer was attempting to stop her vehicle. While her initial act of speeding away from a pursuing public safety officer may have been merely negligent, her ensuing actions, including the loss of control of her vehicle, amount to wilful and wanton misconduct.

■ Riffle contends, as the Court has stated, that the courts of Georgia never have decided a case under the Fireman's Rule involving wilful and wanton misconduct. Riffle would have the Court disregard the clear "wilful and wanton" exception carved out of the Fireman's Rule in *Gaither* because, as Riffle points out, the exception is presented in *dicta*. The exception carved out in *Gaither* is *dicta*, however, only because the defendant's behavior in that case amounted only to negligent conduct, and *not* wilful and wanton misconduct. In other words, the *Gaither* court had no factual grounds upon which to base any *holding* concerning the application of the Fireman's Rule to a case of wilful and wanton misconduct. The presence of the *dicta* in *Gaither*, however, convinces the Court that such an exception to the Fireman's Rule exists in Georgia, despite the fact that such an exception has not been litigated since *Gaither's* publication in 1995.

Riffle further contends that by allowing McClelland's case to proceed past her motion for summary judgment, the Court would, in effect, allow virtually every officer injured in the line of duty to seek a tort recovery. (Def.'s Mot. for Summ. J. at 8.) Such fear of opening the floodgates of litigation, however, is unwarranted. The correct application of the Fireman's Rule, along with its exception for wilful and wanton misconduct, ensures that the policies upon which the rule rests will be protected. But, proper application of the rule and its exception ensures that those wrongdoers who engage in wilful and wanton misconduct assume responsibility for their own actions and that such responsibility is *not* passed on to society as a whole.

**CONCLUSION**

The Court has considered fully the arguments presented by both McClelland and Riffle. For the foregoing reasons, Riffle's Motion for Summary Judgment is **DENIED**.